**FRED BERLANTI & SON, Inc. v. BOROUGH OF MANHEIM AUTHORITY, LANCASTER COUNTY, PENNSYLVANIA (KEYSTONE NAT. BANK OF MANHEIM (PA.), garnishee).**

Civ. No. 8011.

United States District Court
E. D. Pennsylvania.

Sept. 22, 1950.

438

Russell Miller, of Philadelphia, Pa., for plaintiff.

B. M. Zimmerman, of Lancaster, Pa., for garnishee.

Joseph Whetstone, of Townsend, Elliott & Munson, of Philadelphia, Pa., for bondholder.

BARD, District Judge.

On May 3, 1948 the plaintiff, Fred Berlanti and Son, Inc. (hereinafter called Berlanti) acquired a judgment against the defendant, Borough of Manheim Authority, Lancaster County, Pennsylvania (hereinafter called Authority) for $21,178.27 with 4% interest on $16,473.30 from March 7,

1946, and on $4,704.97 from November 1, 1945. To collect this judgment the plaintiff attached the defendant's property in the possession of the Keystone National Bank of Manheim, Pennsylvania (hereinafter called Bank), and had the Bank brought in as garnishee. This case is now before me on the plaintiff's motion for summary judgment against the garnishee.

The Authority was organized pursuant to the Municipality Authorities Act of 1935, as amended,[1] and owns the sewage system in and about the Borough of Manheim. The Borough, however, operates the system under a lease agreement with the Authority.

The Authority decided to install and had partially constructed a modern sewage disposal system in Manheim. To pay for the cost of completing its construction, the Authority in 1944 authorized a $500,000 bond issue.

On September 1, 1944 the Authority entered into a perpetual trust agreement with the Bank whereby the Authority sold, assigned, transferred set over and pledged to the Bank, as trustee, its successors and assigns, all right, title and interest of the Authority in and to the sewer lease with the Borough of Manheim.

In addition to the covenants usually found in such an instrument, the Authority covenanted in Article II to deliver the bonds to the Bank, and in Article III to construct the new sewer system.

On September 13, 1944 Berlanti entered into a contract with the Authority for completing the construction of the sewer system. On September 21, 1944 the trust indenture was filed with the Recorder of Deeds in Lancaster County.

The judgment in favor of Berlanti against the Authority, which was entered earlier in this action, was for $16,473.30 balance due on that construction contract, $457.50 balance due on a contract of March 12, 1945 to load and haul surplus fill, and $4,247.47 balance due on a contract of July 30, 1945 to replace macadam road which was torn up by the construction of the sewer system.

From the sale of the bonds the Bank realized $500,534.70. In accordance with the terms of the trust agreement, $191,913.95 was used to pay the prior outstanding obligations and bonds of the Authority, and $283,363.21 was used to pay some of the construction costs of the sewer system.

The Bank now has on hand a balance of $25,257.54 left from the sale of the bonds and rental income from the lease amounting to $9,973.75, which has been segregated by the Bank as follows:

|  | Sale of Bonds | Rental Income |
|---|---|---|
| Construction Fund | $ 3,132.54 | ....... |
| Reserve Fund | 20,000.00 | $1,200.00 |
| Improvement and Retirement Fund | 2,125.00 | 950.00 |
| Bond Fund | ....... | 7,823.75 |
|  | $25,257.54 | $9,973.75 |

The foregoing discussion outlines the material facts, all of which are undisputed. The outcome of this case now hinges on the determination of the legal questions involved in interpreting the trust agreement. Therefore, the plaintiff's motion for summary judgment may be decided on its merits.

There is no bar to the plaintiff's recovery on the basis of governmental immunity. No statute has been called to my attention which exempts the Authority's property from attachment. The Authority is not a governmental sub-division, and even if it were, the construction of a sewage disposal system would be a proprietary not a governmental function. Cf. Williams v. Samuel et al., 332 Pa. 265, 2 A.2d 834; Ringwalt v. Atglen Borough, 49 Pa.Super. 517.

Nor does the fact that the money is now held by a trustee as security for the beneficiaries, the bondholders, bar the plain-

1. Act of June 28, 1935, P.L. 463, as amended by Act of May 20, 1937, P.L. 739. These Acts have been repealed and replaced by Act of May 2, 1945, P.L. 382, § 1 et seq., 53 P.S. § 2900z—1 et seq.

tiff's recovery. The right of the bondholders to this security is limited by the terms of the trust agreement.

The first basic issue raised by this case is whether the plaintiff can reach the proceeds remaining from the sale of the bonds in order to satisfy his judgment.

■ From studying the trust agreement as a whole, I think that the $25,257.54 remaining from the sale of the bonds is subject to attachment by the plaintiff.

The proceeds from the sale of the bonds were to be deposited with the Bank, and were to be used to pay off the remaining indebtedness from the prior bond issues of 1940 and 1942, and the balance was to be put in the Construction Fund. Trust Indenture, 3rd Whereas Clause; Article II, Section 3.

Article IV of the agreement established the Construction Fund. Section 2 thereof provides that, "The Moneys in the Construction Fund shall be held by the Trustee [Bank] in trust and applied to the payment of the cost of completing the construction of the sewer system in accordance with and subject to the limitations of this Article, and, *pending such application,* shall *be subject to a lien and charge in favor of* the holders of the bonds issued and outstanding under this Indenture * * * until paid out as herein provided." (Emphasis added).

In Section 4 of Article IV the Bank is charged with the duty "to transfer [from the Construction Fund] to the Reserve Fund * * * the amount * * * provided in Section 3 of Article V hereof." This latter provision directs the Bank to transfer and deliver to the Reserve Fund $20,000 immediately upon the execution and delivery of the trust indenture.

Section 7 of Article IV provides that after the construction of the sewer system has been completed, "any balance in the Construction Fund not reserved for the payment of any remaining part of the cost of said construction of the sewer system * * * shall be transferred to and become part of the Improvement and Retirement Fund * * *."

Interest and principal of the bonds were to be paid only out of any and all income derived from the sewer system. 4th Paragraph of Bond.

The bondholders had a lien against the money in the Construction Fund only pending the application of this money to the payment of the costs of construction. Article IV, Section 2. The bondholders' security was the trust agreement. 2nd Paragraph of Bond.

The obvious intent of the Authority was to use the proceeds from the sale of the bonds, first, to pay off the existing bonded indebtedness of the Authority, and second, to pay the cost of constructing the new sewer system.

*After* the provision establishing the Construction Fund had been set forth in the bond and trust agreement, the Authority then proceeded (1) to authorize the transfer of $20,000 from the Construction Fund to the Reserve Fund, and (2) to authorize the transfer of the final balance in the Construction Fund from that fund to the Improvement and Retirement Fund.

The foregoing, all of which was of record when the bonds were sold, leads me to conclude that the Authority originally intended all the proceeds from the sale of the bonds which remained after the prior bond issues were retired should be used, if necessary, to pay the cost of construction.

■ 1. $3,132.54 in the Construction Fund: Without doubt, this money is subject to attachment by the plaintiff. The fact that there is not enough money in this fund to pay all the construction creditors will not defeat a judgment creditor's attachment. The Authority is not in bankruptcy, and no question of priorities exists.

2. $20,000 in the Reserve Fund: The best laid schemes of mice and men go oft astray. Unfortunately, the sewer system cost more than was anticipated, and there is not enough money left to pay the cost of construction *and* to set up the Reserve Fund.

The bondholders purchased their bonds knowing that their money was to pay the cost of construction, and knowing that in-

terest and principal was to be paid only out of the rental income from the lease.

 Naturally, the bondholders would like to have some of their money retained in reserve as security. But in view of the Authority's intent as evidenced by the provisions of the bond and the trust agreement, the provisions establishing the Reserve Fund must be interpreted to be contingent upon the Bank having sufficient funds to pay all the construction costs.

This ruling in favor of Berlanti, the construction man, is consistent with the purpose and objectives of the Mechanic's and Materialmen's Lien Laws.

3. $2,125 in the Improvement and Retirement Fund: This money should represent the balance left in the Construction Fund after a reserve had been set up to pay all remaining construction costs. In view of the circumstances of this case, I cannot understand how this amount came to be transferred to this fund. After the transfer of $20,000 to the Reserve Fund only $5,257.54 was on hand to pay over $21,000 of construction debts. Based on these figures there is no authority to permit the transfer of this money to the Improvement and Retirement Fund.

This money should be in the Construction Fund. Accordingly, it is likewise subject to attachment by the plaintiff.

To summarize the above discussion, the plaintiff's motion for summary judgment against the garnishee must be granted to the extent that the plaintiff can attach and levy on the $25,257.54 remaining from the sale of the bonds. But in so doing, the plaintiff must levy first against the money in the Construction Fund and in the Improvement and Retirement Fund, and second against the money in the Reserve Fund.

The second issue raised by this case is whether the plaintiff can also, if necessary reach the Rental Income in order to satisfy his judgment.

The fourth paragraph of the issued Bonds, the transfer of the lease and the income therefrom to the Bank, and Article V of the trust agreement prove that the Rental Income is to be used only for payment of principal and interest on the bonds and the payment of miscellaneous operating expenses, and that it is not to be used for the payment of the costs of construction.

The contract with Berlanti and the trust agreement with the Bank were not concocted overnight. There is no doubt that Berlanti knew of the trust agreement, particularly since that agreement prescribed the procedure by which Berlanti was paid. Article III; Article IV, Section 3.

Having this knowledge, Berlanti in no way relied upon the future Rental Income for the payment of its claims.

In view of the Authority's intent, the terms of the trust agreement, and Berlanti's knowledge, the motion for summary judgment against the garnishee to the extent of the $9,973.75 Rental Income will be denied.

An order will be entered in conformity with the views expressed in the foregoing opinion.