**Richter v. George Doherty Lumber Co.**

*Robert W. Smiley* and *Brandt, Riester, Brandt & Malone*, for plaintiff.

*William H. Mendlow*, for defendant.

*B. A. Karlowitz, Richard B. Tucker, Theodore L. Hazlett, Jr.*, and *Patterson, Crawford, Arensberg & Dunn*, for garnishees.

SOFFEL, J., June 27, 1958.—Catherine F. Reilly, judgment creditor of defendant, issued writs of foreign attachment or writs of attachment execution

against funds due defendant in the hands of the Urban Redevelopment Authority of Pittsburgh and the Public Parking Authority of Pittsburgh.

On April 24, 1958, the Urban Redevelopment Authority of Pittsburgh was served with a writ of attachment execution and interrogatories in this action. The Urban Redevelopment Authority has two contracts, designated as contract no. 7 and contract no. 8, with defendant, Doherty Lumber & Wrecking Company, for the demolition of certain buildings and structures in redevelopment area no. 3, commonly known as lower hill redevelopment area. Contract no. 7 was executed by the parties on July 15, 1957, and work completed thereunder May 20, 1958, with a balance now due defendant in the sum of $29,002.30. Contract no. 8 was executed by both parties on December 16, 1957, and work completed thereunder on May 19, 1958, with a balance now due defendant in the sum of $13,946.50. On May 1, 1958, Catherine F. Reilly, plaintiff judgment creditor, released the Urban Redevelopment Authority of the lien, if any, of this attachment execution proceeding and all money due and owing defendant under the terms and conditions of contract no. 8.

The Parking Authority of Pittsburgh, while engaged in the construction of parking lots, engaged one Doherty, also known as Doherty Lumber & Wrecking Company, to perform some work for it in this construction. After Doherty Lumber Company completed the work for the Parking Authority, various creditors of Doherty, or the Doherty Lumber & Wrecking Company, issued writs of foreign attachment or writs of attachment execution against the funds due Doherty, or the Doherty Lumber Company, in the hands of the Parking Authority.

Both Urban Redevelopment Authority and the Parking Authority have filed preliminary objections in the nature of a demurrer to these garnishment proceed-

ings raising a question of law. The legal question may be thus stated:

Are the Urban Redevelopment Authority of Pittsburgh and the Parking Authority of Pittsburgh public bodies, corporate and politic, existing as agencies of the Commonwealth of Pennsylvania under the statutes which created them immune from and not subject to attachment execution proceeedings as garnishees?

The Urban Redevelopment Authority of Pittsburgh was organized and exists under the Urban Redevelopment Law of May 24, 1945, P. L. 991, as amended, 35 PS §1701. Section 9 of said act provides, inter alia:

"An Authority shall constitute a public body, corporate and politic, exercising public powers of the Commonwealth as an agency thereof. . . ."

The Public Parking Authority of Pittsburgh is a "public body corporate and politic", existing under the Parking Authority Law of June 5, 1947, P. L. 458, 53 PS §341, p. 156, et seq.

It is a well-known principle of law that a sovereign State, its instrumentalities, subdivisions or agencies, or municipalities or their officers may not be made garnishees. This principle was ably set forth by Judge Nixon of this court in Wood Refrigerating Co. v. Preston, 7 D. & C. 2d 648 (1956). Judge Nixon, in his well-reasoned opinion, lays down the principle of law governing this situation as follows:

"It has long been the settled rule in Pennsylvania that a municipal corporation cannot be made garnishee, either in foreign or execution attachment. That principle was clearly set forth by the Supreme Court nearly a hundred years ago in City of Erie v. Knapp, 29 Pa. 173 (1857). This case and others antedating it have never been reversed or altered, but have been followed repeatedly by the courts of common pleas, e. g., Charles B. Scott Co. v. Guzzi, etc., 30 D. & C. 608 (1937). The reason supporting this sound rule is obvious; it would

be greatly injurious to the public interest to hold municipalities and their officers liable to garnishment and subject them to the delay, annoyance and expense involved in attachment proceedings. It is no exaggeration that to require a city, especially one as large as Pittsburgh, to act as a 'collection agency' would constitute continual and serious interference with the public purpose for which it exists."

This case is also authority for the principle that municipal corporations are not liable in attachment whether operating in a governmental or a proprietary capacity, on page 650:

"There is no legal or logical reason for predicating municipal liability in attachment, in assumpsit or in any civil proceeding save trespass, upon the distinction between governmental and proprietary functions."

1 Goodrich-Amram §1253-2, while discussing persons who may be made garnishees, comments as follows:

"The general designation of 'any person' in the Rule does not, however, include sovereign state, its instrumentalities or political subdivisions, or municipalities, or their officers. It is considered against public policy to hamper the functions of government by such a garnishment. Accordingly, unless a statute or the Rules specifically permit it, no garnishment of property or funds held by them in their governmental capacity is permitted."

3 Goodrich-Amram §3102-3 makes it clear that the above quoted paragraph describing foreign attachment also applies to attachment execution.

In the case of Charles B. Scott Company v. Guzzi, 30 D. & C. 608 (1937), the court held that a municipal corporation cannot lawfully be made a garnishee in attachment proceedings. The basis for this rule seems to be the public inconvenience which could be caused by

subjecting municipailties or agencies of the Common-
wealth to attachment execution or foreign attachment.

In the case of Iron City Spring Company, a corpora-
tion, v. Nello L. Teer, 53 Dauph. 118 (1942), plaintiff,
a Pennsylvania corporation by foreign attachment, in-
stituted an action in assumpsit against a defendant, a
nonresident, for service rendered and labor and mate-
rial furnished to defendant in the execution of his con-
tract with the Pennsylvania Turnpike Commission.
Plaintiff issued a praecipe for writ of foreign attach-
ment summoning the turnpike commission as gar-
nishee. The commission alleged that it was an instru-
mentality of the State and therefore not subject to
garnishment proceedings and moved to quash the writ.
Plaintiff contended that since the writ creating the com-
mission granted it the power "to sue and be sued", any
immunity from garnishment proceedings was ex-
pressly waived.

The court held that the Pennsylvania Turnpike Com-
mission is an instrumentality of the Commonwealth of
Pennsylvania, citing 4 Am. Jur. §141, Attachment and
Garnishment, p. 640, as follows, on page 120:

"The general rule is that the United States, a for-
eign sovereignty, a state of the Union, a municipal cor-
poration, . . . and a government owned or operated
corporation or an officer thereof, so far as it is engaged
in the performance of a public function, cannot be sum-
moned as garnishees in any action without statutory
authorization or consent or waiver. This rule, in so far
as it is applicable to the Federal and State governments
and their officials, has never been seriously questioned.
One reason for the rule is that the process of garnish-
ment is substantially the prosecution of an action by
the defendant in the name of the plaintiff against the
garnishee, and, as a sovereign state is not liable to be
sued in its own cause except by express statutory au-

thorization, the courts will not allow this to be accomplished indirectly. . . . Another reason commonly given in support of the rule is that public policy demands the exemption of the government and its agents from liability as garnishees."

The court held the granting of power to sue and be sued was not a waiver of its immunity from garnishment proceedings. The court said:

"Only by express statutory provision making them liable to garnishee process can sovereignties, public corporations and their agents become subject to attachment: 28 C. J. §80, p. 64. In the absence of such a provision in the statute creating it, the Pennsylvania Turnpike Commission remains immune."

Plaintiff relies upon the case of Fred Berlanti & Son, Inc., v. Borough of Manheim Authority, 93 F. Supp. 437 (U. S. D. C. E. D. Pa. 1950). We are of the opinion that this case does not control. The factual situation involved differs from that in these cases. In the Berlanti case, funds belonging to the municipal authority were attached in the hands of a third party which was not an agency of the Commonwealth or municipality but a bank. The court stated that these funds could be attached in the hands of the bank. It is thus apparent that the factual situation in the Berlanti case is not the same as in the instant case. There the court permitted funds owned by an authority but held by a third party, a bank, to be attached. Further, the court there based its decision partially on the doctrine that the functions of the authority involved in the case were proprietary and not governmental. This is not a valid distinction as indicated by Judge Nixon in Wood Refrigerating Company v. Preson, supra.

McQuillin on Municipal Corporations states the following in vol. 17, §49.86:

". . . the weight of authority favors the view that

municipal corporations and their officers having money or property in their hands to which other persons are entitled are not liable to the creditors of such persons on attachment or garnishment process unless made so by statute or charter . . . The exemption is granted from public necessity, in order that the business of the municipality may be transacted by its officers without interference from suits in which the public is not interested. Stated briefly, public officers, who are bound to transact the public business by certain rules and in prescribed forms, should not be exposed to the expense, inconvenience and hazard incident to garnishment proceedings."

The Urban Redevelopment Law, 35 PS §702, under the heading of "Findings and declaration of policy" states, inter alia:

"(a) That there exist in urban communities in this Commonwealth areas which have become blighted because of the unsafe, unsanitary, inadequate or overcrowded condition of the dwellings therein, or because of inadequate planning of the area, or excessive land coverage by the buildings thereon, or the lack of proper light and air and open space, or because of the defective design and arrangement of the buildings thereon, or faulty street or lot layout, or economically or socially undesirable land uses.

"(d) That the acquisition and sound replanning and redevelopment of such areas in accordance with sound and approved plans for their redevelopment will promote the public health, safety, convenience and welfare.

"Therefore, it is hereby declared to be the policy of the Commonwealth of Pennsylvania to promote the health, safety and welfare of the inhabitants thereof by the creation of bodies corporate and politic to be known as Redevelopment Authorities, which shall

exist and operate for the public purposes of acquiring and replanning such areas and of holding or disposing of them in such manner that they shall become available for economically and socially sound redevelopment. Such purposes are hereby declared to be public uses for which public money may be spent, and private property may be acquired by the exercise of the power of eminent domain": Act of May 24, 1945, P. L. 991, sec. 2.

This statement of policy clearly indicates that in creating the redevelopment authority the Commonwealth intended it to exercise public functions normally exercised by the Commonwealth or its governmental subdivisions and for these purposes made it its agent.

It is therefore logical to apply to the authority the same reasoning as applied to municipalities in exempting them from foreign attachment execution.

Further, it is to be noted that the act gives the authority the right "to sue and be sued. Section 1709-Q Powers and Authority." Notwithstanding this, we would apply the reasoning of the Court of Common Pleas of Dauphin County which held in the turnpike case, supra, that in the absence of express statutory authority, the turnpike commission could not be held liable in attachment execution. Thus in the absence of express statutory authority we are of the opinion that a redevelopment authority or a public parking authority is not subject to garnishment proceedings.

Similarly the Parking Authority Law, 53 PS §342, under "Findings and declaration of policy" declares, page 157:

"(i) That it is intended that the authority cooperate with all existing parking facilities so that private enterprise and government may mutually provide adequate parking services for the convenience of the public;

"Therefore it is hereby declared to be the policy of the Commonwealth of Pennsylvania to promote the safety and welfare of the inhabitants thereof by the creation in first, second, second A and the third class cities, boroughs, and townships of the first class of bodies corporate and politic to be known as 'Parking Authorities' which shall exist and operate for the purposes contained in this act.[1] Such purposes are hereby declared to be public uses for which public money may be spent and private property may be acquired by the exercise of the power of eminent domain": Acts of June 5, 1947, P. L. 458, sec. 2; May 9, 1949, P. L. 969, sec. 2; May 10, 1951, P. L. 291, sec. 2.

The Parking Authority of Pittsburgh is thus declared to be an agency of the Commonwealth invested by this statute with powers normally residing in the Commonwealth or its subdivisions.

We are convinced that both the Urban Redevelopment Authority of Pittsburgh and the Parking Authority of Pittsburgh are "public bodies corporate and politic", exercising public powers of the Commonwealth as an agency thereof. The statutes creating them specifically state this. They are public bodies, organized and existing as agencies of the Commonwealth of Pennsylvania, charged with the performance of public functions. As such they are not subject to attachment execution proceedings.

### Order

And now, to wit, June 27, 1958, preliminary objections of Urban Redevelopment Authority of Pittsburgh and Parking Authority of Pittsburgh are sustained.

---

"[1] Section 341 et seq. of this title."