## INDEPENDENCE FEDERAL BANK, F.S.B. *v.* PAINE WEBBER

90-84                                    789 S.W.2d 725

Supreme Court of Arkansas
Opinion delivered May 21, 1990

*John M. Belew*; and *Murphy, Post, Thompson, Arnold and Skinner*, by: *Jerry Post*, for appellant.

*Arnold & Lax*, by: *W. Ellis Arnold III*, for appellee.

TOM GLAZE, Justice. This is an appeal from the trial court's order granting Paine Webber's motion for judgment against the garnishee, Independence Federal Bank, F.S.B. (Bank), for the full value of the garnishment. On appeal, the Bank argues that under our case law, the trial court erred in finding it liable under the writ of garnishment. We agree and therefore reverse.

To understand this case requires a recitation of the facts that led to this dispute. Paine Webber obtained a judgment by default against Harold Bowman for approximately $14,237 plus costs in the Circuit Court for St. Claire County, Alabama. On May 12, 1987, Paine Webber registered its foreign judgment in the Pulaski County Circuit Court and while the judgment became final, Bowman made no payments on it. However, on September 26, 1988, Bowman acquired a $425,000 judgment against the Bank in U.S. District Court, Eastern District of Arkansas, and upon learning of Bowman's success against the Bank, Paine Webber served a writ of garnishment along with allegations and interrogatories on the Bank.

In its answer to Paine Webber's writ of garnishment, the Bank affirmatively stated that, while Bowman had obtained a judgment against it, the judgment and any execution on it had been stayed pending post-trial motions; it further alleged that if the motions were denied, the Bank intended to perfect an appeal. Paine Webber filed a traverse and denial alleging that the Bank's answer was insufficient and unresponsive; it further requested that the lower court enter an order declaring that the Bank should not disburse any funds to Bowman. The Bank countered requesting Paine Webber's traverse of answers and writ of garnishment be dismissed.

On December 2, 1988, the District Court denied the Bank's post-trial motions and lifted the court's stay of execution. One hour after that court's ruling, U.S. Marshals executed a federal writ of execution on Bowman's behalf by seizing from the Bank $124,000 in cash and negotiable instruments and two branch bank buildings. However, after an emergency hearing on December 3, 1988, the District Court again stayed the proceeding, permitting the Bank to post a $435,000 supersedeas bond for its appeal to the Court of Appeals. Since the Bank was insolvent, it made arrangements which authorized First Commercial Bank of Little Rock to issue a cashier's check on the Bank's behalf, payable to the clerk of the U.S. District Court.

The Bank later entered into a settlement agreement with Bowman and the District Court approved the agreement in a hearing held on January 19, 1989.[1] Under the terms of this agreement, the clerk of the district court was to pay Bowman $250,000 out of the supersedeas bond as full and complete settlement of all claims against the Bank. The remaining money from the bond was to be refunded to the Bank. Apparently, secrecy was part of the agreement, because the parties agreed that the court order approving the settlement would not be filed and made public until after Bowman's attorney had received a check in the $250,000 amount. The District Court approved the parties' agreement only after it was assured the court's clerk had not been served with a writ of garnishment.

---

[1] We note that there were other defendants besides the Bank involved, however, since the other defendants are not involved in this appeal, we will only discuss the Bank's actions.

Upon learning of the Bank's settlement with Bowman, Paine Webber, on January 25, 1989, filed a Motion for Judgment in its state garnishment action against the Bank, alleging that the writ it previously served on the Bank had effected a lien upon the judgment debt the Bank owed Bowman. Paine Webber contended the Bank was liable for the full value of the garnishment and the lower court agreed.

On appeal, the Bank argues the trial court was wrong for the three following reasons: (1) the Bank was never in possession of the money it owed Bowman, and Paine Webber should have garnished the district court clerk; (2) a judgment debtor, such as the Bank, is not subject to garnishment under Arkansas law; and (3) under Arkansas law, garnishment of a judgment debt is not allowed when the debt was suspended by a stay of execution, as was the case here. Since these arguments are interrelated, we will discuss them collectively.

In finding the Bank liable for the full amount of the garnishment, the trial court relied on the federal district court case of *Equifax, Inc.* v. *Luster*, 463 F. Supp. 352 (E.D. Ark. 1978). In that case, the district court was faced with the very issue now before the court — whether under Arkansas law, a judgment debtor is subject to garnishment. As did the federal district court in *Equifax*, we must analyze Arkansas's statutory and case law pertaining to garnishments in order to resolve the issues before us.

We first turn to the general garnishment statute, Ark. Code Ann. § 16-110-401 (1987), which provides the following:

> In all cases where any plaintiff . . . may have obtained a judgment before any of the courts, and the plaintiff shall have reason to believe that any other person is indebted to the defendant or has in his hands or possession goods and chattels, moneys, credits, and effects belong to the defendant, the plaintiff may sue out a writ of garnishment, setting forth the claim, demand, or judgment. . . .[2]

Under Ark. Code Ann. § 16-110-112(a) (1987), property

---

[2] Under the general provisions, Ark. Code Ann. § 16-110-102(a)(1) (1987) mirrors this provision.

may be attached that is a fund in the court, by serving the writ of garnishment on the clerk of the court. While the wording of § 16-110-401 suggests that a judgment debtor can be subject to a writ of garnishment, our case law, set out below, suggests otherwise.

In *Trowbridge & Jennings* v. *Means*, 5 Ark. 135 (1843), this court addressed this issue. There, Means had obtained a judgment against Hartley, and sued out a writ of garnishment against Trowbridge and Jennings, whom Hartley had received a judgment against. In their answer to the writ of garnishment, Trowbridge and Jennings set up as a defense that their debt to Hartley was embodied in a judgment on which execution had been issued. The court held that the judgment debtors, Trowbridge and Jennings, could not be reached by garnishment because such a procedure would subject the judgment debtors to double liability. While this court recognized that the judgment debtor could be protected by applying for some kind of extraordinary remedy, it stated that he or she should not be put to the trouble or expense.

The fact situation before the court in *Tunstall* v. *Means*, 5 Ark. 700 (1843), was similar to the present case. In that case, Means received a judgment against Hartley and served a writ of garnishment upon the judgment debtor, Tunstall. Tunstall answered the writ of garnishment stating that he and others owed Hartley $1,000 on a note and that Hartley had received a judgment for that amount and had executed on the judgment by levying on Tunstall's property. In holding the judgment debtor could not be liable under Means's garnishment, the court followed its *Trowbridge* decision and stated that the rationale in that holding was even stronger when applied to a situation where property held by the judgment debtor had been levied upon by his judgment creditor. The court stated the following:

> The principal question in this case, whether a judgment debt is the subject of the garnishment under our statute, was decided by this court in *Trowbridge* vs. *Means*, at a former term. With the decision in that case, we are entirely satisfied and fully concur. The reasoning of the court there applies more strongly in this case where the debt of the garnishee had not only passed into judgment, but an execution upon it was levied upon his property. This to a

certain extent was a satisfaction of the judgment. While the levy continued upon the property and until the means of satisfaction under the execution was exhausted, the creditor could not proceed against the debtor, but must rely upon the property seized for satisfaction. Here there was nothing upon which the garnishment could operate. The property of the debtor was divested by the levy and vested in the sheriff in trust for the creditor. It was thus *in custodia legis* and beyond the reach of the garnishment.

In the same year that *Trowbridge* and *Tunstall* were handed down, the court decided *Fowler* v. *McClelland*, 5 Ark. 188 (1843), where it again held that a judgment debtor could not be reached by garnishment. In *Fowler*, this court expounded on its concern about harassment of the judgment debtor by stating that "he would always be compelled to submit to great vexation and harassment, and in many instances be forced to resort to a court of equity for protection. . . ."

This court refused to apply the holdings of the above cases to the case of *St. Louis I.M. & S. Ry.* v. *Richter*, 48 Ark. 349 (1886). In that case, Richter recovered a judgment by default from the railroad before a justice of the peace. The railroad appealed to the circuit court, and the judgment was superseded the next day. Before the case reached trial in the circuit court, a judgment creditor of Richter served a writ of garnishment on the railroad. This court allowed the garnishment to stand, finding that the *de novo* appeal to the circuit court gave the railroad the opportunity to shield itself from liability of making payments to both the plaintiff and the plaintiff's creditor. In addition, the court stressed that no execution could issue on the suspended judgment. In so holding, the court gave the following explanation concerning the *Trowbridge* and *Tunstall* decisions where the court held that a judgment debtor could not be garnished:

> This was not because the terms of the garnishment statute were not broad enough to cover a debt which had been reduced to judgment, but for the reason that to permit the garnishee to be pursued by process upon his creditor's judgment, and that of the garnishor, at the same time, would bring about a clash of jurisdictions, or else subject the garnishee to the hazards of paying the same debt

twice. . . . But neither of these evils will be presented in allowing the plaintiff's debt to be garnished in this case.

While these cases are over 100 years old, they were examined and reaffirmed in the more recent case of *McIlroy Bank* v. *First National Bank*, 252 Ark. 558, 480 S.W.2d 127 (1972). In *McIlroy*, this court added that the *Richter* case in no way limited the holdings in *Trowbridge* and *Tunstall* because *Richter* was not concerned with a final judgment.

Finally, we discuss the *Equifax* case wherein, as previously mentioned, the federal district court was presented with a garnishment/judgment debtor situation that required that court to analyze the cases we just discussed. In that case, the judgment debtor, Equifax, Inc., brought suit in equity in the nature of an interpleader to determine which of various claimants, who had served writs of garnishments on Equifax, were entitled to the fund for which Equifax made bond when it instituted the suit.[3] In holding that the writs of garnishment were properly served on the judgment debtor, the federal district court distinguished its fact situation from the *Trowbridge*, *Tunstall* and *Fowler* cases by relying on the following factors: (1) the interpleader suit had already been filed; (2) the validity of the garnishments was attacked only collaterally by rival claimants, and (3) the court was able to protect all the parties including the garnishee. Since Equifax had filed an interpleader action and all the affected parties were before the court, the court found that situation was the same as the judgment debtor's *de novo* appeal in *Richter*, because the judgment debtor was protected from double liability. In its holding, the district court relied heavily on the fact that the court was able to protect all of the parties' interests.

In the present case, the fact situation is very different from *Equifax* and *Richter*. Unlike in *Richter*, here we are concerned with a final judgment. The Bank argues that the judgment was not final for garnishment because of the stays of execution granted by the federal district court pursuant to Fed. R. Civ. P. Rule 62(a)(b) and (d). However, under federal law, the

---

[3] In *Equifax*, the writs of garnishment were actually served on the clerk of the district court.

judgment is entered forthwith and pendency of the motion for new trial does not prevent the judgment from becoming final and does not prevent the issuance of execution. *See Marcelletti & Son Const. Co. v. Millcreek TP. Sewer Auth.*, 313 F. Supp. 920 (W.D. Penn. 1970). While a party may obtain stays of execution, such a stay does not prevent the judgment from being final. Likewise, contrary to *Equifax*, here all the parties were not before the district court and protected by an interpleader action, and the garnishment is being challenged by the Bank as garnishee.

The underlying theme of the holdings of our earlier cases is that we will not subject judgment debtors to double liability. While a judgment debtor can file an interpleader action like in *Equifax*, this court has made it clear that it will not put the judgment debtor to the expense or trouble of applying for such extraordinary relief for protection. Here, the Bank was subject to a writ of garnishment by Paine Webber and also Bowman's levy of execution on Bowman's judgment against the Bank. Under these circumstances, the Bank was subject to the hazard of being liable for the same debt twice.

Furthermore, the Bank posted the $435,000 cash bond with the clerk of the district court to release its assets and perfect its appeal. At this point, Paine Webber, assuming it was aware of this bond, could have garnished the federal district court clerk in keeping with Ark. Code Ann. § 16-110-112(a) (1987). Paine Webber failed to do so. The garnishment of the funds in custody of the district court would have put all the claims for this money before the district court. However, since the district court clerk was not garnished, the clerk properly paid the money to Bowman according to the settlement reached between him and the Bank.

The payment of the agreed amount to Bowman by the clerk of the court released the Bank from its liability under the judgment. To hold the Bank liable now under Paine Webber's writ of garnishment for the same debt would be contrary to the holdings of *Trowbridge, Tunstall, Fowler,* and *McIlroy*. There is a strong presumption of the validity of prior decisions. *Thompson v. Sanford*, 281 Ark. 365, 663 S.W.2d 932 (1984). Although we do have the power to overrule previous decisions, it is necessary as a matter of public policy to uphold prior decisions unless great

injury or injustice would result. *Id.* We have not been given any convincing authority or reason why these cases should be overruled.

For the reasons stated above, we reverse.

DUDLEY and PRICE, JJ., not participating.