WILLIAMS MFG. CO. *v.* STRASBERG.

5-1624                                    314 S. W. 2d 500

Opinion delivered July 1, 1958.

*A. M. Coates,* for appellant.

*Daggett & Daggett,* for appellee.

CARLETON HARRIS, Chief Justice. Williams Manufacturing Company, appellant herein, is an Ohio corporation engaged in the manufacture and sale of women's shoes. Leonard J. Strasberg is a retail merchant of Marianna, Arkansas. In 1954, Strasberg commenced handling appellant company's shoes, having purchased same through appellant's salesman, one Roy McGinnis. On July 3, 1956, appellant invoiced to appellee at Marianna an order which had been placed with McGinnis in the total amount of $630.85. The merchandise was purchased for fall and winter trade, and was stored to be put on the shelves when fall trade commenced.

On July 12, 1956, Strasberg sent his check to the company for the sum of $278.95, and returned merchandise which had been previously purchased at a cost of $351.90, said check and merchandise to constitute pay-

ment for the July 3rd order. The company accepted the check, but refused to accept the return of the merchandise as part payment.[1] Appellant advised appellee that he could return the July 3rd shipment, but Strasberg refused to do so. Appellant instituted suit for the $351.90, together with interest. Strasberg answered, denying the indebtedness, and affirmatively stated that the purchase of the merchandise (invoiced July 3rd, 1956) was conditioned upon an agreement that Williams would not open or accept new accounts for the retail sale of similar merchandise manufactured by it, that appellant violated this agreement, and did thereby breach its contract. The cause proceeded to trial and the jury returned a verdict for appellee. From the judgment of the court dismissing the complaint, appellant brings this appeal.

Appellee contended that he had an agreement with the company giving him, together with Carothers Shoe Store of Marianna, the exclusive right to handle Williams Company shoes in that city, and appellant violated such agreement by shipping shoes to West's Department Store, a competitor. It was this alleged violation of the agreement that caused appellee, according to his testimony, to send in shoes from previous orders as partial payment of the July 3rd order. Williams contended that it had no such agreement, and that its salesman, Mr. McGinnis, had no authority to enter into same. According to our view, there is no necessity to discuss whether such an agreement existed, or whether McGinnis was authorized to enter into such a contract, since we consider, that under the testimony, appellant was entitled to recover for the July 3rd shipment, irrespective of the alleged breach of contract. Strasberg had been purchasing shoes from appellant company since November, 1954. During that period, he had purchased several shipments and paid for them. Subsequent thereto, on May 4, 1956, he purchased the shoes (which are the source of this litigation), and received

---

[1] The merchandise consisted of shoes which had remained on appellee's shelves from previous orders, some of which he referred to as "odds and ends." The record does not reflect as to what finally happened to the shoes.

the invoice and shipment on July 3rd. On July 12, Strasberg wrote a letter to the company, sending his check for $278.95, and returning shoes (previously purchased and paid for) amounting to a value of $351.90. He stated in his letter:

"We regret this return, but you have violated your contract with us. * * * Your shoes are moving into Marianna through West's Store, our bitterest competitor. When we agreed to buy your shoes, an understanding was reached whereby our store and Carothers Shoe Store would be the stores to handle Williams Shoes in Marianna (pop. 4,500) exclusively. * * * The only defense I have against a firm that will violate their contract with me is to return the odds and ends of their merchandise. * * *"

It would therefore appear that at the time Strasberg received the July 3rd shipment of shoes, or within a few days thereafter, (at most, within nine days) he had already learned that West's store was selling Williams Brothers shoes. If an agreement had been breached, he was aware of it at that time, but despite such knowledge, retained the shoes, placed them in stock, and sold them in the fall. At the conclusion of appellee's testimony, appellant moved for a directed verdict, first contending that the proof reflected that McGinnis had no authority to bind Williams Manufacturing Company to the agreement claimed by Strasberg, and second,

"The uncontradicted proof on the part of the defendant is that after the controversy arose as to the exclusive right to sell Williams Brothers products in Marianna, he accepted the fall shipment and placed the same on his shelves and proceeded to sell the same. The duty of the defendant was that if he was under the belief that he had an exclusive contract to sell Williams Brothers shoes was to return the merchandise and refuse to accept the same. Having accepted the merchandise he now cannot plead any such agreement with a salesman."

We feel that appellant, on the basis of the quoted portion of the motion, was entitled to the directed verdict, and the court erred in overruling such motion.

If Strasberg felt that appellant had breached its contract, he should have returned the shipment just received. In *International Shoe Company* v. *King,* 186 Ark. 799, 56 S. W. 2d 171, appellant instituted suit against King to recover $1,784.99 for "Red Goose" shoes sold and shipped to King by the company. King defended on the ground that he had an agreement with the company to handle these shoes exclusively, and that International violated the agreement by allowing another firm in Camden to handle the same line of shoes. King shipped the shoes back to appellant, because of the alleged breach. On appeal, we affirmed, but there, King returned *all the shoes* purchased from appellant, *including all that he had of the most recent purchase.* He refused to further handle their merchandise, and immediately placed orders with other shoe companies. Here, Strasberg took all of the shoes remaining in stock from *prior* purchases, and returned them to appellant, together with his check for the difference, as payment for the last shipment. This had the effect of exchanging old goods for new. Included in the shoes returned were white shoes and straw shoes, bought for the purpose of sale in the spring and summer, and the returned shoes were, to a large extent, "odds and ends." To permit appellee to select such stock as he desired to return to appellant, particularly that stock for which the sale season was mostly over, would certainly give him an undue advantage. Appellant was either entitled to remuneration for the fall shoes — or entitled to receive them back. As stated in Williston on Contracts, Vol. 5, page 4118:

"Few questions in the law have given rise to more discussion and difference of opinion than that concerning the right of one who has materially broken his contract without legal excuse to recover for such benefit as he may have conferred on the other party by part performance of an indivisible contract * * *. A satis-

factory solution is not easy, for two fundamental legal policies seem here to come in conflict. On the one hand, it seems a violation of the terms of a contract to allow a plaintiff in default to recover — to allow a party to stop when he pleases and sell his part performance at a value fixed by the jury to the defendant who has agreed only to pay for full performance. On the other hand, to deny recovery often gives the defendant more than fair compensation for the injury he has sustained and imposes a forfeiture on the plaintiff. * * * But the second of these opposing policies has steadily increased in favor in recent years. Except where the obliquity of the defective performance is of a sort that indicates moral obliquity, and where, therefore, the courts feel that the one who is in default may properly be penalized, the tendency is to grant him restitution if a substantial net benefit has accrued to the defendant by partial performance.''

Strasberg could have, of course, returned the fall shipment, and then sought damages for breach of contract. As it was, he did not elect to sue for damages, nor was any proof of damage offered during the trial. He elected only to contend that the contract was breached, but if we consider such contention to be entirely established, still, this did not entitle him to keep new merchandise and pay for it with old. It only entitled him to refuse to pay for the merchandise at all, to return it forthwith, and to refrain from handling Williams Brothers shoes in the future. One cannot ''have his cake and eat it too.'' He cannot accept benefits under a contract, and at the same time, avoid his obligations under such agreement. Appellee received a substantial benefit from the shipment of fall shoes, and having accepted that benefit, he cannot refuse to compensate the company because of their alleged breach.

Accordingly, the judgment of the Circuit Court is reversed, and the cause remanded with directions to enter judgment for appellant in the sum of $351.90, together with interest as provided by law.

MILLWEE and WARD, JJ., dissent.