Curtis Lee FRANKLIN, Jr. *v.* HEALTHSOURCE of ARKANSAS

96-116                                                    942 S.W.2d 837

Supreme Court of Arkansas
Opinion delivered April 21, 1997
[Petition for rehearing denied May 27, 1997.*]

* NEWBERN, BROWN, and IMBER, JJ., would grant.

*Jay Youngdahl* and *David Hodges,* for appellant.

*Jack, Lyon & Jones, P.A.,* by: *Allen Carney Bowmnan,* for appellee.

W.H."DUB" ARNOLD, Chief Justice. This case involves a dispute between an insured, Curtis Lee Franklin, and his insurer, Healthsource of Arkansas, over allocation of the proceeds of a policy limit settlement in a personal-injury action; both parties claim exclusive right to the proceeds. The trial court ruled that as a matter of law pursuant to *Higginbotham v. Ark. Blue Cross & Blue Shield,* 312 Ark. 199, 849 S.W.2d 464 (1993), Healthsource was entitled to receive the proceeds because its conventional right of subrogation, which arose from a subrogation agreement, took priority over Franklin's legal right of subrogation. Franklin appeals requesting that this court overrule *Higginbotham.*

On March 31, 1994, Franklin was injured in an automobile accident involving James Arlen Ray, Jr. Franklin sustained injuries that were substantial, and he was hospitalized. After being released from the hospital, on May 9, 1994, Franklin was presented with a document from his medical insurance carrier, Healthsource of Arkansas, which was entitled "Right of Recovery/Subrogation Questionnaire." This document contained general questions regarding the accident and, at the bottom, a section entitled "Assignment of Benefits." After consulting with his attorney, Franklin answered the questions and signed the document.

Franklin filed suit alleging negligence by Ray. Defendant Ray filed an answer, and later his insurance carrier offered Franklin the liability policy limit of $25,000 in settlement of the claim. After discovery revealed that Ray had no appreciable assets, Franklin accepted the settlement offer.

Ray then filed a third-party complaint requesting that the court allocate the $25,000 among potential claimants, including several medical care providers, Healthsource, and the Jefferson County Child Support Enforcement Unit. All third parties except Healthsource were dismissed by order of the trial court.

The trial court held a hearing to dispose of the $25,000. Healthsource claimed it was entitled to the entire $25,000 policy limit because of the subrogation agreement with Franklin. Healthsource, pursuant to the medical insurance policy provided by Franklin's employer, had paid medical bills incurred by Franklin for the sum of $71,120.65.

Franklin contended that he was entitled to the $25,000 because he had incurred damages for which he had not been compensated. It is undisputed that Franklin incurred medical bills of at least $124,000. Expert testimony was presented at the hearing regarding the potential value of Franklin's claims; the total value was valued in excess of $400,000.

The trial court ruled that Franklin's attorneys were entitled to attorney fees to be paid from the settlement and that Healthsource was entitled to the remainder pursuant to the subrogation agreement between Healthsource and Franklin. The trial court

based this ruling upon this court's opinion in *Higginbotham*. In supporting this finding, the trial court ruled that there was a valid contract in the subrogation agreement because Franklin signed the document after consulting counsel which made his consent a "knowing and informed act." Franklin appeals the trial court ruling requesting that this court overrule *Higginbotham*.[1]

The *Higginbotham* decision was a plurality opinion that illustrates the division on this court concerning the allocation of proceeds of policy-limit settlements through conflicting rights of subrogation. Like the case before us, *Higginbotham* involved a dispute over whether the insured or the insurer was entitled to the proceeds from a policy-limit settlement when both parties had claims exceeding the amount of the settlement.

In *Higginbotham*, a three-justice plurality concluded that conventional subrogation rights of an insurer created by contract prevail over an insured's equitable right of subrogation arising as an operation of law. Specifically, these justices reasoned: "Without discounting the equitable properties of subrogation, we can conceive of no sound reason why broad principles of equity should be imbued with dominance over clear and specific provisions of a contract agreed to by the parties, at least where public policy considerations are wanting." *Id.* at 203.

The three dissenting justices in *Higginbotham* cited *Shelter Mut. Ins. Co. v. Bough*, 310 Ark. 21, 834 S.W.2d 637 (1992), as the controlling rule. They determined that "subrogation is recognized or denied upon equitable principles without differentiation between 'legal subrogation' which arises by application of principles of equity and 'conventional subrogation' arising from contract or the acts of the parties." *Id.* at 205, *citing Garrity v. Rural Mut. Ins. Co.*, 253 N.W.2d 512 (Wis. 1977).

The deciding vote in *Higginbotham* was cast by a concurring opinion, which supported the ultimate conclusion reached by the

---

[1] Appellant Franklin also appeals the validity of the subrogation agreement claiming that it was not a valid contract, that the entire contract between the parties was not in the record, and that the wording on the "questionnaire" was ambiguous. We do not address these issues because they are moot following our discussion of subrogation rights.

plurality, but departed from the rule espoused by those three justices by expressing an alternative theory of recovery. The concurring opinion closely follows the rule set forth in *Bough.*

■ In *Bough,* we addressed a dispute regarding the subrogation rights of an insurer versus those of an insured for the proceeds of a policy-limit settlement; those factual elements closely resemble both the case before us and the facts in *Higginbotham.* In this court's unanimous decision in *Bough,* this court recited the following rule:

> the general rule is that an insurer is not entitled to subrogation unless the insured has been made whole for his loss, [however], the insurer should not be precluded from employing its right of subrogation when the insured has been fully compensated and is in a position where the insured will recover twice for some of his or her damages.

*Id.* at 641.

In reviewing our decisions *Bough* and *Higginbotham,* We take this opportunity to clarify our position on the priority given to subrogation rights of insureds versus those of insurers in instances where both parties have claims against a partial recovery from a third party. It is our determination that *Bough* is the better rule. A contrary rule relying upon the dominance of one type of subrogation over another is arbitrary and inconsistent with theories of equity. The same facts give rise to both legal and conventional subrogation. In a situation where recovery from the wrongdoer is large enough to make both parties "whole," no issue exists over which party's rights prevail or which type of subrogation is controlling. However, it is often the case that it is not possible for one party, or even both parties, to be made "whole."

■ In such situations, the equitable principles and objectives of subrogation are controlling. According to Couch, subrogation has dual objectives: "(1) preventing the insured from recovering twice for the one harm, as would be the case if he could recover from both the insurer and from a third person who caused the harm, and (2) reimbursing the surety for the payment which was made." COUCH ON INSURANCE 2D (Rev. ed 1983 and Supp. 1996) *Subrogation* § 61:18, *citing, Shipley v. Northwestern*

*Mut. Ins. Co.*, 244 Ark. 1159, 428 S.W.2d. 268 (1968). Couch further states that "[e]quity will require that the insured be made whole *before* the insurer's right to subrogation will arise." COUCH, SUBROGATION § 61:20.

Following *Bough*, an insurer is entitled to enforce its contractual right of subrogation after the insured has been fully compensated, or "made whole," for his total loss. This precludes the insured from recovering twice for some of his or her damages; therefore, insurer is entitled to reimbursement from funds received by the insured from the third party when the insured receives more than the total of his or her loss. As stated by Professor Freedman, "the precise measure of reimbursement is the amount by which the sum received by the insured from the [third party], together with the insurance proceeds, exceeds the loss sustained and the expense incurred by the insured in realizing on his claim." WARREN FREEDMAN, FREEDMAN'S RICHARDS ON THE LAW OF INSURANCE, v.2 § 12.6 (6th ed. 1990).

In the case at bar, it is undisputed that Franklin incurred over $124,000 in medical expenses, and Healthsource paid only $71,120.65 of those bills. Before the issue of double recovery could arise, Franklin would have to recover in excess of $50,000 to be "made whole" for his medical expenses alone — this does not consider the amount of additional damages Franklin incurred that have been valued at over $400,000. Based upon these facts, there is no possibility that Franklin could enjoy a double recovery.

To allow the literal language of an insurance contract to destroy an insured's equitable right to subrogation ignores the fact that this type of contract is realistically a unilateral contract of insurance and overlooks the insured's total lack of bargaining power in negotiating the terms of these types of agreements. *See generally*, WARREN FREEDMAN, FREEDMAN'S RICHARDS ON THE LAW OF INSURANCE, v. 2 § 12.6 (6th ed. 1990) *citing* Patterson, ESSENTIALS OF INS. LAW (1935), p. 122. Moreover, the proposition that the rule in *Bough* would result in higher insurance premiums disregards the fundamental principle that insurers have been compensated through premiums paid in consideration their assuming these very risks. As Professor Patterson notes,

"[s]ubrogation is a windfall to the insurer [which] plays no part in rate schedules (or only a minor one). . . ." *Id.*

■ ■ It is our conclusion that the equitable nature of subrogation requires that no distinction need be made between equitable and conventional rights of subrogation. An insured's right to subrogation takes precedent over that of an insurer, so the insured must be wholly compensated before an insurer's right to subrogation arises; therefore, the insurer's right to subrogation arises only in situations where the recovery by the insured exceeds his or her total amount of damages incurred. For the foregoing reasons, we reverse and remand for proceedings not inconsistent with this opinion.

Reversed and remanded.

NEWBERN, BROWN, and IMBER, JJ., dissent.

ROBERT L. BROWN, Justice, dissenting. I dissent because I disagree that *Higginbotham v. Arkansas Blue Cross and Blue Shield,* 312 Ark. 199, 849 S.W.2d 464 (1993), should be overruled under the facts of this case. The majority adopts an absolute full-recovery rule which is at odds with the trend. Most recent cases hold that the clear and unambiguous terms of an insurance contract can modify the common law principle of full recovery, as discussed below. Indeed, the majority opinion cites no caselaw to the effect that a clear and unambiguous contract cannot alter full recovery. I further dissent because the majority misstates my concurring opinion in *Higginbotham* in an effort to designate *Higginbotham* a plurality decision. I clearly joined the majority in *Higginbotham* on the issue of whether the contract controlled when third-party benefits paid to the insured were for the same risk.

*I. Conventional Subrogation*

That an express contract can ultimately control the subrogation issue, even when an insured has not fully recovered from his loss, is obvious based on recent cases. *See, e.g., Fields v. Farmers Ins. Co., Inc.,* 18 F.3d 831 (10th Cir. 1994); *Wine v. Globe Am. Cas. Co.,* 917 S.W.2d 558 (Ky. 1996); *Hershey v. Physicians Health Plan of Minn., Inc.,* 498 N.W.2d 519 (Minn. App. 1993), *following*

*Westendorf v. Stasson*, 330 N.W.2d 699 (Minn. 1983) (requiring full recovery in absence of express contract terms to the contrary); *Unified School Dist. No. 259 v. Sloan*, 19 Kan. App. 2d 445, 871 P.2d 861 (1994) (following *Higginbotham*).

In *Fields v. Farmers Ins. Co., Inc., supra*, the Tenth Circuit Court of Appeals cited the general rule that an insurer is not entitled to subrogation until the insured has been fully compensated but then went on in no uncertain terms to state that the clear and unambiguous terms of an insurance contract can modify that common law principle:

> Of those jurisdictions following the rule, many allow the rule to be overridden by provisions in an insurance contract. *See, e.g., Shelter Ins. Co.*, 498 N.W.2d at 79; *Higginbotham v. Arkansas Blue Cross & Blue Shield*, 312 Ark. 199, 849 S.W.2d 464, 466-67 (Ark. 1993); *Culver v. Insurance Co. of N. Am.*, 115 N.J. 451, 559 A.2d 400, 402-04 (1989); *Hill v. State Farm Mut. Auto. Ins. Co.*, 765 P.2d 864, 868 (Utah 1988); *Garrity*, 253 N.W.2d at 515-16; *Peterson v. Ohio Farmers Ins. Co.*, 175 Ohio St. 34, 191 N.E.2d 157, 159 (1963); *but see Powell v. Blue Cross & Blue Shield*, 581 So.2d 772, 777 (Ala. 1990) ("[A] prerequisite to the right of subrogation is the full compensation of the insured. In effect, an attempt to contract away this prerequisite . . . would defeat the right itself.").[1] As the Arkansas Supreme Court stated, "Without discounting the equitable properties of subrogation, we can conceive of no sound reason why broad principles of equity should be imbued with dominance over clear and specific provisions of a contract agreed to by the parties, at least where public policy considerations are wanting." *Higginbotham*, 849 S.W.2d at 466.

> Here, the clear language of the insurance contract provides that GEHA shall be subrogated to *any* recovery that plaintiff receives from the negligent third party or its insurer. Plaintiff has not identified, nor have we discerned, public policies that would compel the Oklahoma court to disregard the clear and unambiguous subrogation provisions of this insurance contract. We conclude that if faced with this issue, the Oklahoma Supreme Court would enforce the subrogation provisions on grounds that parties to an insurance contract are free to modify general common law principles that would apply absent express contractual provisions.

---

[1] This was a plurality decision.

*Fields*, 18 F.3d at 835–36.

The Courts of Appeal in *Hershey v. Physicians Health Plan of Minn., Inc., supra,* and *Unified School Dist. No. 259 v. Sloan, supra,* and the Kentucky Supreme Court in *Wine v. Globe Am. Cas. Co., supra,* employ the same reasoning — clear and unambiguous language of an insurance contract may modify the full-recovery rule. In addition, *Couch on Insurance* contains the following statement on the effect of express policy provisions on the full-discovery rule: "Where the right of an insurer to subrogation is expressly provided for in the policy, its rights must be measured by, and depend solely on, the terms of such provisions." 16 COUCH ON INSURANCE 2D § 61:23, p. 101 (1983).

We are hampered in the instant case by not knowing what the subrogation clause in the Healthsource policy provides. The policy is not part of the record in this case. Nevertheless, Healthsource hangs its hat on the language of the assignment agreement, and that language reads:

## ASSIGNMENT OF BENEFITS

I HEREBY ASSIGN TO HEALTHSOURCE ANY AND ALL BENEFITS PAYABLE BY ANY INSURANCE, INCLUDING BUT NOT LIMITED TO LIABILITY INSURANCE AND UNINSURED MOTORIST INSURANCE RELATING TO MY ACCIDENT/INJURY ON *3-31-94*, TO THE EXTENT NECESSARY TO COVER ALL SERVICES RENDERED BY AND BENEFIT PROVIDED BY HEALTHSOURCE. I DO THIS WITH FULL UNDERSTANDING OF HEALTHSOURCE'S CONTRACTUAL RIGHTS OF RECOVERY/SUBROGATION AND COORDINATION OF BENEFITS. I AUTHORIZE HEALTHSOURCE TO RELEASE INFORMATION NECESSARY TO PURSUE THIS CASE.

Here, though the first sentence of the assignment is clear, the second sentence appears to premise the assignment on Healthsource's contractual rights in the insurance policy. Without knowing how the policy provides for subrogation rights in the carrier, we are left without an essential piece of the puzzle. This in itself is sufficient

reason not to overrule *Higginbotham*. We do not know the full agreement of the parties. ·

In short, the majority errs in adopting an absolute full-recovery rule which eliminates any possibility of an insured's agreeing to subrogation or assignment with the carrier. There are ways to assure that the insured is fully apprised of an agreement and what benefits are being relinquished. Moreover, by eliminating subrogation, assignment, and indemnification across the board absent full recovery, insurance rates in Arkansas may well increase for all insureds. Should the insured be entitled to opt for a subrogation clause and lower premiums on the one hand or full recovery on the other? Perhaps not, but such a policy decision is better addressed by the General Assembly.

## II. Holding in Higginbotham

Finally, *Higginbotham* was not a plurality opinion on the issue of whether an express contract can control subrogation for benefits paid out for the same risk. A contract can control that facet. My complete concurring opinion in *Higginbotham* follows:

> I agree that Blue Cross should be subrogated under its insurance policy to benefits paid for the same risk that it covered which is medical care due to personal injury. Based on the record before us, it is impossible to tell what State Farm's liability benefit of $25,000 involved. Presumably it was liability coverage for bodily injury only. Blue Cross should only recover by subrogation to the extent that there has been double recovery by the insured for the same damages covered by Blue Cross. Had the appellant shown that part of the State Farm benefits were for damages other than for medical treatment, I would disallow subrogation for the non-medical portion of the benefits paid for public policy reasons. However, that was not done, perhaps because the parties understood that the liability coverage only went to bodily injury. For that reason I concur with the opinion.

To summarize, the salient points of my concurring opinion were: (1) the insurance policy controlled the subrogation issue for benefits paid by a third-party carrier for the same risk; (2) Blue Cross should only recover under subrogation if the insured had recovered both from Blue Cross and the third-party carrier for the same

risk (double-recovery); and (3) if benefits were paid in by the third-party carrier for a different risk, public policy should prevent Blue Cross from enforcing its subrogation rights. Subrogation after full recovery by the insured was not the issue in *Higginbotham*, as it is not the issue in the instant case. Thus, the term "double recovery" was used only in the sense of the insured receiving benefits from two carriers for the same risk.

I respectfully dissent.

ANNABELLE CLINTON IMBER, Justice, dissenting. The majority's opinion abolishes the precedent established only three years ago in *Higginbotham v. Arkansas Blue Cross & Blue Shield*, 312 Ark. 199, 849 S.W.2d 464 (1993), dissolves the legal distinction between equitable and conventional subrogation, and disregards the well-established doctrine in Arkansas that the parties to an insurance contract are free to determine the terms of their agreement. For these reasons, I must respectfully dissent.

First, the majority's opinion overrules the well-reasoned precedent we established only three years ago in *Higginbotham*. This court has consistently recognized that the doctrine of *stare decisis* is of fundamental importance, and that our prior decisions should not be overruled unless great injury or injustice would result. *Sanders v. County of Sebastian*, 324 Ark. 433, 922 S.W.2d 334 (1996); *Independence Fed. Bank v. Webber*, 302 Ark. 324, 789 S.W.2d 725 (1990). According to the United States Supreme Court, adherence to precedent is necessary to promote "stability, predictability, and respect for judicial authority." *Hilton v. South Carolina Pub. Rys. Comm'n*, 502 U.S. 197 (1991). As Justice Cardozo recognized many years ago, no judicial system could do society's work if it eyed each issue afresh in every case that raised it. B. CARDOZO, THE NATURE OF THE JUDICIAL PROCESS 149 (1921).

In no area of law is *stare decisis* more important than in contract law where the parties, such as Franklin and Healthsource, have relied on precedent when they executed a document that proscribed their respective legal rights. *See Payne v. Tennessee*, 501 U.S. 808 (1991); *Parish v. Pitts*, 244 Ark. 1239, 429 S.W.2d 45 (1968). Most importantly, the United States Supreme Court has admonished that precedent should be abandoned only where the

prior decision is unsound in principle, unworkable in practice, or significantly diluted. *See Planned Parenthood v. Casey*, 505 U.S. 833 (1992); *Allied-Signal Inc. v. Director, Division of Tax*, 504 U.S. 768 (1992). None of these circumstances exist which would compel this court to abandon the precedent it established only three years ago in *Higginbotham*.

The majority characterizes the *Higginbotham* opinion as "a plurality opinion." I disagree with this characterization. A majority of the *Higginbotham* court, as recognized in Justice Brown's separate dissenting opinion in this case, upheld conventional subrogation for the same damages.

The majority incorrectly states that "[f]ollowing *Bough*, an insurer is entitled to enforce its *contractual* right of subrogation." (Emphasis added.) Rather, *Shelter Mut. Ins. Co. v. Bough*, 310 Ark. 21, 834 S.W.2d 637 (1992), merely reaffirmed an insurer's *equitable* right of subrogation. Moreover, the majority's opinion dissolves the distinction we observed in *Higginbotham* between equitable and conventional subrogation by concluding that the "same facts give rise to both." With this assertion, I also cannot agree. Equitable subrogation, as was utilized by the trial court in *Bough*, is a remedy imposed upon the parties by operation of law. In contrast, conventional subrogation, which occurred in *Higginbotham*, arises under the terms of a contract to which the parties specifically assented. This distinction is an important one because this court has consistently held that an insured may contract with his or her insurance carrier on whatever terms the parties agree so long as the terms are not contrary to statute or public policy. *Pardon v. Southern Farm Bureau Casualty Ins.*, 315 Ark. 537, 868 S.W.2d 468 (1994); *Shelter Gen. Ins. v. Williams*, 315 Ark. 409, 867 S.W.2d 457 (1993).

This court recently held that the public policy of this State may be found in its constitution and statutes. *Guaranty Nat'l Ins. Co. v. Denver Roller Inc.*, 313 Ark. 128, 854 S.W.2d 312 (1993). The right of subrogation between an insured and his or her insurance carrier is recognized in several places in the Code, and therefore cannot be said to be contrary to public policy. *See e.g.,* Ark. Code Ann. §§ 23-89-101, 207, & 405 (Repl. 1992). Because a conventional subrogation agreement does not violate public pol-

icy, this court should enforce the terms of the contract to which the parties expressly agreed.

Of particular importance to this case is Ark. Code Ann. § 16-22-304 (Repl. 1994), whereby the public policy of this State allows attorneys to attach a statutory lien on their client's settlement proceeds. In fact, by virtue of this statutory provision, Franklin's attorneys were granted over one-third of Franklin's settlement money despite the fact that he had not been made whole. Surely, if such a statutory provision is in accordance with this State's public policy, then so too must an insured's common law right to enter into a conventional subrogation contract be in accordance with the State's public policy.

Furthermore, Franklin received the benefit of his subrogation contract when he allowed Healthsource to pay over $71,000 in medical benefits. This court should not allow him to escape his corresponding duty to reimburse Healthsource, to the extent possible, for this disbursement. *See Ray v. Pearce*, 264 Ark. 264, 571 S.W.2d 419 (1978); *Williams Mfg. Co. v. Strasberg*, 229 Ark. 321, 314 S.W.2d 500 (1958). It should also be noted that Healthsource only recouped approximately $14,000 of the $71,000 it spent on Franklin's behalf. Therefore, neither Franklin nor Healthsource was "made whole" by Franklin's tactical decision to accept $25,000 from the tortfeasor as full compensation for his injuries. In other words, both Healthsource and Franklin were damaged by *the tortfeasor's insolvency*, and not by virtue of the subrogation agreement.

In sum, the *Higginbotham* decision was not only consistent with the well-established principles of contract law, but was also in accordance with the rule adopted by several other jurisdictions that the parties may, by contract, alter their rights to equitable subrogation such that the insured does not have to be made whole before the insurance carrier is entitled to reimbursement for the expenses it paid on the insured's behalf. *E.g., Martin v. Dillow,* 637 N.E.2d 961 (Ohio Ct. App. 1994); *Unified School Dist. No. 259 v. Sloan,* 871 P.2d 861 (Kan. Ct. App. 1994); *In re Estate of Scott,* 567 N.E.2d 605 (Ill. App. Ct 1991) *cert. denied,* 575 N.E.2d

915 (Ill. 1991); *Hill v. State Farm Mut. Auto. Ins. Co.*, 765 P.2d 864 (Utah 1988). In the majority's opinion, this court has simply removed the parties' freedom to determine the terms of their insurance agreement, and with such a result I cannot agree.

For these reasons, I cannot join in the majority's departure from the legally sound, workable, and undiluted precedent established in *Higginbotham*. Therefore, I respectfully dissent.

NEWBERN and BROWN, JJ., join in this dissent.