## IN THE SUPREME COURT OF MISSISSIPPI
## NO. 97-CA-01443-SCT

*JOSEPH HARE*

*v.*

*STATE OF MISSISSIPPI AND CENTRA BENEFIT SERVICES, INC.*

| | |
|---|---|
| DATE OF JUDGMENT: | 10/20/1997 |
| TRIAL JUDGE: | HON. L. BRELAND HILBURN, JR. |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | LANCE L. STEVENS |
| ATTORNEY FOR APPELLEES: | OFFICE OF THE ATTORNEY GENERAL |
| | BY:  T. HUNT COLE, JR. |
| NATURE OF THE CASE: | CIVIL - INSURANCE |
| DISPOSITION: | REVERSED AND RENDERED- 03/18/1999 |
| MOTION FOR REHEARING FILED: | 4/1/99 |
| MANDATE ISSUED: | 5/13/99 |

**BEFORE PRATHER, C.J., SMITH AND WALLER, JJ.**

**SMITH, JUSTICE, FOR THE COURT:**

### STATEMENT OF THE CASE

#### A. Statement of the Facts

¶1. On March 31, 1995, Appellant Joseph Hare (hereinafter "Hare") was involved in a motor vehicle accident with an uninsured motorist, Lotoya A. Weaver, in Noxubee County, Mississippi. Hare was a former employee of the Mississippi Forestry Commission who was occupationally disabled at the time of the collision and lost no wages as a result of the accident. Hare was still insured under the Mississippi State and Public School Employees' Health Insurance Plan (the "State Health Plan"), which is funded by the State of Mississippi (the "State") and administered by CENTRA Benefit Services, Inc. ("CENTRA"). Miss. Code Ann. § 25-15-11 (Supp.). The premiums for Hare's health coverage were paid 100 percent by the State. Miss. Code Ann. § 25-15-15 (Supp.).

¶2. As a result of the collision, Hare required hospitalization and accrued medical expenses totaling $8,667.50. The State, through CENTRA, paid health insurance benefits of $6,056.44. Hare was also insured under an uninsured motorist policy issued by Progressive Insurance Company, with policy limits of uninsured coverage being $10,000.00 per person/ $20,000.00 per accident.

¶3. Hare ultimately recovered $10,000.00 on the uninsured motorist policy in a settlement with Progressive. The State then asserted a subrogation claim against the uninsured motorist benefits collected by Hare. At no time did Hare or the State pursue a judgment against the tortfeasor, Weaver.

## B. The Proceedings Below

¶4. On December 13, 1995, Hare filed a Complaint for Declaratory Judgment asking the County Court of First Judicial District of Hinds County, Mississippi, to adjudicate that the State and CENTRA were not entitled to subrogation. On Motion for Summary Judgment by Hare and Cross-Motion for Summary Judgment by the State and CENTRA, County Court Judge C. A. "Chet" Henley heard oral arguments by both parties and then granted the State's motion and denied Hare's motion.

¶5. Hare timely appealed the decision to the Circuit Court of the First Judicial District of Hinds County. Circuit Judge L. Breland Hilburn affirmed the judgment of the county court, and Hare timely appealed to this Court on October 20, 1997.

¶6. Aggrieved by the circuit court's judgment, Hare appeals to this Court and raises the following contentions:

**I. THE COURTS BELOW ERRED BECAUSE THE STATE'S SUBROGATION CONTRACT IS INAPPLICABLE UNDER THESE CIRCUMSTANCES.**

**II. THE COURTS BELOW ERRED BECAUSE PUBLIC POLICY FORBIDS REIMBURSEMENT UNDER THESE CIRCUMSTANCES.**

## STANDARD OF REVIEW

¶7. Rule 56(c) of the Mississippi Rules of Civil Procedure allows summary judgment where there are no genuine issues of material fact such that the moving party is entitled to judgment as a matter of law. To prevent summary judgment, the nonmoving party must establish a genuine issue of material fact by means allowable under the rule. *Richmond v. Benchmark Constr. Corp.*, 692 So.2d 60, 61 (Miss. 1997); *Lyle v. Mladinich*, 584 So.2d 397, 398 (Miss. 1991).

¶8. This Court employs a *de novo* standard in reviewing a lower court's grant of summary judgment. *Mississippi Ethics Comm'n v. Aseme*, 583 So.2d 955, 957 (Miss. 1991); *Cossitt v. Federated Guaranty Mut. Ins. Co.*, 541 So.2d 436, 438 (Miss. 1989). Evidentiary matters are viewed in a light most favorable to the nonmoving party. *Palmer v. Biloxi Medical Center, Inc.*, 564 So.2d 1346, 1354 (Miss. 1990). If any triable issues of material fact exist, the lower court's decision to grant summary judgment will be reversed. Otherwise, the summary judgment is affirmed. *Richmond*, 692 So.2d at 61; *Brown v. Credit Center, Inc.*, 444 So.2d 358, 362 (Miss. 1984).

## ANALYSIS OF LAW

**I. WHETHER THE COURTS BELOW ERRED BECAUSE THE STATE'S SUBROGATION CONTRACT IS INAPPLICABLE UNDER THESE CIRCUMSTANCES.**

and

**II. WHETHER THE COURTS BELOW ERRED BECAUSE PUBLIC POLICY FORBIDS**

**REIMBURSEMENT UNDER THESE CIRCUMSTANCES.**

¶9. The County Court Judge held " . . . that it is clear from the indemnity contract that Defendants' right to subrogation extends to benefits provided from anyone from whom the insured [Plaintiff Hare] had the right to recover." The circuit court affirmed this analysis. Hare complains on appeal that the State Health Plan's subrogation clause is inapplicable based on its own terms.

¶10. Paragraph 5.3 of the State Health Plan states:

> a. In the event any hospital, medical, and related service or benefit is provided for or any payment is made or credit is extended to an Employee under the Plan, **the Plan shall be subrogated and shall succeed to the right of the Employee or Dependent to recovery against any person, organization, or other carrier. The acceptance of such benefits hereunder shall constitute such subrogation**. The Employee or Dependent shall pay over to Department of Finance and Administration, for the Plan all sums recovered by suit, settlement, or otherwise, on account of such hospital, medical, and related service or benefit, and shall take such action to furnish such information and assistance, and execute such assignments and other instruments as may be required to facilitate enforcement of rights hereunder and shall take no action prejudicing the rights and interest of the Department of Finance and Administration hereunder.

> b. Failure by the Employee or Dependent to execute such evidence of subrogation as may be required shall make the Employee or Dependent liable for all costs and expenses incurred under the Plan in his behalf because of such hospital, medical and related services. Nothing contained in this provision shall be deemed to change, modify, or vary the terms of Article V; 5.2.

(emphasis added).

¶11. The subrogation clause is also summarized in the Summary Plan Description, Revised January 1995, as follows:

> If the Plan has paid or provided benefits on behalf of you or your covered Dependent, the Plan has the right to recover the cost of your medical care, to the extent of benefits provided, **from anyone from whom you have the right to recover.** In other words, we may subrogate or substitute for you and seek to recover our payment. Our right of "subrogation" does not change the type or amount of benefits available to you.

> For example, if you are injured in a car accident and the Plan pays $1,000 for your related medical care, and an auto insurer pays you $500 for the same medical care services you needed as a result of that accident, the Plan will recover $500 from you, since duplicate payment was made to you in the amount of $500.

> You must provide any assistance request to help the Claims Administrator recover any payments. **The intent of this provision is to eliminate double payments of your medical expenses**. Please complete the sections of the claim form that requests the time, locations and persons involved in such an accident. This will ensure that you will continue to receive future claim payments without adjustment or delays.

(emphasis added).

¶12. Hare focuses on the intent language of the Summary Plan Description, quoted immediately above, and argues that in the present situation no duplicate payment was made to him. He bases his assertion on the affidavits of two expert witnesses. Hare obtained affidavits of two trial lawyers who estimated the "reasonably anticipated" general damages Hare could expect to recover from the tortfeasor. Affiant Paul Snow estimated a jury verdict in the $50,000 to $125,000 range, and affiant Mitchell Tyner in the $75,000 to $175,000 range.

¶13. Hare's argument is that until the claimant has been fully compensated there cannot be a double recovery. Because his experts on potential jury verdicts estimated his total reasonably anticipated recovery (including pain and suffering, etc.) in excess of the $10,000.00 uninsured motorist amount actually recovered, he was not fully compensated or "made whole." Hare directs this Court's attention to *Dunnam v. State Farm Mut. Auto. Ins. Co.* where we held that ". . .[in the absence of provisions modifying uninsured motorist subrogation rights] Mrs. Dunnam, guardian, is legally entitled to <u>full recovery</u> of the amount of her judgment before State Farm shall be entitled to subrogation." *Dunnam v. State Farm Mut. Auto. Ins. Co.*, 366 So.2d 668 (Miss. 1979) (emphasis added). However, *Dunnam* is cited for this "made whole" principle only, as it is not controlling of this matter, because it dealt specifically the Mississippi Uninsured Motorist Coverage Act found at Miss. Code Ann. Section 83-11-107.

¶14. The "made whole" rule, as it sometimes called, is the general principle that an insurer is not entitled to equitable subrogation until the insured has been fully compensated. Most other jurisdictions follow the "made whole" rule in its broadest terms. *See, e.g.*, *Shelter Ins. Cos. v. Frohlich*, 243 Neb. 111, 498 N.W.2d 74, 78 (1993) ("Generally, subrogation is unavailable until the debt owed to a subrogor has been paid in full"); *Shelter Mut. Ins. Co. v. Bough*, 310 Ark. 21, 834 S.W.2d 637, 641 (1992) (same); *Wimberly v. American Casualty Co.,* 584 S.W.2d 200, 204 (Tenn.1979) (same); *Garrity v. Rural Mut. Ins. Co.*, 77 Wis.2d 537, 253 N.W.2d 512, 514 (1977) (same). Some courts adopting the rule have explained that the rule is most consistent with principles of equity and justice upon which the doctrine of subrogation is based. *Rimes v. State Farm Mut. Auto. Ins. Co.*, 106 Wis.2d 263, 316 N.W.2d 348, 353 (1982); *Wimberly*, 584 S.W.2d at 203. One court has reasoned that "where either the insurer or the insured must to some extent go unpaid, the loss should be borne by the insurer for that is a risk the insured has paid it to assume." *Garrity*, 253 N.W.2d at 514.

¶15. The State counters Hare's contention in two ways. First, the State responds that Hare did not pursue recovery from the uninsured tortfeasor, and no judgment was ever obtained against her. Therefore, regardless of the expert affidavits, this Court cannot know for sure what Hare would have received from a jury verdict.

¶16. Second, the State also counters that the lower courts correctly held that under the plain terms of the State Health Plan, Hare accepted benefits thereunder and must now pay over to the Department of Finance and Administration "all sums recovered . . . by settlement" for hospital, medical or related services. The State directs this Court to *Sessoms v. Allstate Ins. Co.*, where it was stated:

> It is clear that the relationship between an insurance company and its insured is contractual in nature, with the rights and duties set out by the provisions of the insurance policy. *Cauthen v. National Banks Life Ins. Co.*, 228 Miss. 411, 88 So.2d 103 (1956). <u>Like all other contracts, insurance policies which are clear and unambiguous are to be enforced according to their terms as written</u>. *Davidson v. State Farm Fire & Cas. Co.*, 641 F.Supp. 503 (N.D.Mass.1986); *Aero*

*International v. United States Fire Ins. Co.*, 713 F.2d 1106 (5th Cir.1983).

*Sessoms v. Allstate Ins. Co.*, 634 So.2d 516, 519 (Miss. 1993) (emphasis added). Thus, the plain terms of the insurance contract should be binding and controlling.

¶17. In support of this second point, the State argues that under Mississippi law two different types of subrogation exist: (1) equitable subrogation- arising from operation of law; and (2) conventional subrogation-arising from contract. *Union Mortgage, Banking & Trust Co. v. Peters*, 72 Miss. 1058, 18 So. 497 (1895); *St. Paul Prop. & Liability Ins. Co. v. Nance*, 577 So.2d 1238, 1240 (Miss. 1991). In *Peters*, this Court distinguished between the two as follows:

> The principle of equitable subrogation does not arise from contract (for that is conventional subrogation), but is a creation of the court of equity, and is applied in the absence of an agreement between the parties, when otherwise there would be a manifest failure of justice.

*Peters*, 72 Miss. 1060, 18 So. at 500. Similarly, the *Nance* Court noted that subrogation had equitable origins but that it could now arise in statutory or contractual contexts. *Nance*, 577 So.2d at 1240.

¶18. The State asserts that the case *sub judice* is obviously one of conventional subrogation, and the bottomline issue is then whether the subrogation clause is sufficiently clear and broad to entitle the insurer to recover despite the "made whole" rule. *See Blue Cross & Blue Shield of Ohio v. Hrenko*, 72 Ohio 3d 120, 647 N.E. 2d. 1358 (1995) (health insurer could recover from uninsured motorist proceeds under clear provisions of health insurance policy); *Fields v. Farmers Ins. Co.,*[1] 18 F.3d 831, 834-835 (10th Cir. 1994) (health insurer could recover its payments from uninsured motorist proceeds where the health insurance contract provided that it would be subrogated from any sums recovered by the plaintiff). Thus, under *Sessoms*, the State Health Plan's clear and plain provisions should be enforced according to their terms as long as they are not ambiguous.

¶19. Many of those jurisdictions following the "made whole" rule allow the rule to be overridden by provisions in an insurance contract, as the State asks this Court to do in the case *sub judice*. *See, e.g.*, *Shelter Ins. Co.*, 498 N.W.2d at 79; *Culver v. Insurance Co.of N. Am.*, 115 N.J. 451, 559 A.2d 400, 402-04 (1989); *Hill v. State Farm Mut. Auto. Ins. Co.*, 765 P.2d 864, 868 (Utah 1988); *Garrity*, 253 N.W.2d at 515-16; *Peterson v. Ohio Farmers Ins. Co.*, 175 Ohio St. 34, 191 N.E.2d 157, 159 (1963); *but see Franklin v. Healthsource of Arkansas*, 328 Ark. 163, 942 S.W.2d 837 (Ark. 1997) (specifically holding that the dominance of one type of subrogation over another is arbitrary; thus, the insured's right to subrogation takes precedence over that of an insurer); *Powell v. Blue Cross & Blue Shield*, 581 So.2d 772, 777 (Ala.1990) ("[A] prerequisite to the right of subrogation is the full compensation of the insured. In effect, an attempt to contract away this prerequisite ... would defeat the right itself.").

¶20. The core issue is then whether Mississippi should follow the Arkansas approach announced in *Franklin*, *supra*, or the Ohio approach announced in *Hrenko*, *supra*. In *Hrenko*, the Supreme Court of Ohio held that the subrogation clause at issue was of the conventional sort, and thus, by its clear language, it applied. *Hrenko*, 647 N.E.2d at 1359. Here, Hrenko was physically injured in a car accident caused by an uninsured motorist. *Id*. at 1358. His insurance carrier, Blue Cross & Blue Shield of Ohio, paid for the resulting medical expenses. Hrenko filed a claim with his uninsured motorist carrier, Allstate Insurance Company. Hrenko and Allstate ultimately settled the claim, which then prompted Blue Cross seek

reimbursement of the medical expenses it paid pursuant to a subrogation clause in the health insurance contract. *Id*. at 1359. The *Hrenko* Court focused on conventional subrogation and found the subrogation clause by its own plain language in the policy to be broad and clear enough to entitle Blue Cross to recover in subrogation. *Id*. at 1360.

¶21. In *Franklin*, the Supreme Court of Arkansas overturned its previous decision in *Higginbotham v. Arkansas Blue Cross & Blue Shield*, 312 Ark. 199, 849 S.W.2d 464 (1993). *Franklin*, 942 S.W.2d at 838. In *Higginbotham*, the Arkansas Supreme Court had allowed the "made whole" rule to be overridden by contractual provisions. *Higginbotham*, 849 S.W.2d at 466-467. In *Franklin*, the court overruled the *Higginbotham* decision, and instead, held that "the equitable nature of subrogation requires that no distinction need be made between equitable and conventional rights of subrogation." *Franklin*, 942 S.W.2d at 840.

¶22. In *Franklin*, there was an automobile accident in which the plaintiff Franklin was physically injured. *Id*. at 838. His insurance carrier, Healthsource, paid his medical claims in the amount of $71,120.65, but also had Franklin sign a subrogation agreement. Franklin brought suit against the tortfeasor who, along with his liability insurance carrier, eventually settled for $25,000.00. *Id*. Healthsource claimed that it was entitled to the entire amount under the subrogation agreement, and Franklin claimed that he was entitled to the entire amount, because he had incurred damages for which he had not been compensated.[(2)] *Id*.

¶23. The Arkansas trial court entered summary judgment for Healthsource relying upon the *Higginbotham* decision. *Id*. In reversing the lower court and overturning *Higginbotham*, the Arkansas Supreme Court delved into the nature of subrogation, as follows:

> ...[I]t is often the case that it is not possible for one party, or even both parties, to be made "whole."

> In such situations, the equitable principles and objectives of subrogation are controlling. According to Couch, subrogation has dual objectives: "(1) preventing the insured from recovering twice for the one harm, as would be the case if he could recover from both the insurer and from a third person who caused the harm, and (2) reimbursing the surety for the payment which was made." Couch on Insurance 2d (Rev. ed 1983 and Supp.1996) Subrogation § 61:18, *citing*, *Shipley v. Northwestern Mut. Ins*. 168 Co., 244 Ark. 1159, 428 S.W.2d 268 (1968). Couch further states that "[e]quity will require that the insured be made whole before the insurer's right to subrogation will arise." Couch, Subrogation § 61:20.

> . . .[A]n insurer is entitled to enforce its contractual right of subrogation after the insured has been fully compensated, or "made whole," for his total loss. This precludes the insured from recovering twice for some of his or her damages; therefore, **the insurer is entitled to reimbursement from funds received by the insured from the third party when the insured receives more than the total of his or her loss**. As stated by Professor Freedman, "the precise measure of reimbursement is the amount by which the sum received by the insured from the [third party], together with the insurance proceeds, exceeds the loss sustained and the expense incurred by the insured in realizing on his claim." Warren Freedman, FREEDMAN'S RICHARDS ON THE LAW OF INSURANCE, v.2 § 12.6 (6th ed. 1990).

*Id.* at 839-40 (emphasis added).

¶24. Franklin incurred over $124,000 in medical expenses, and Healthsource paid only $71,120.65 of those bills. *Id.* at 840. Before the issue of double recovery could arise, Franklin would have to recover in excess of $50,000 to be "made whole" for his medical expenses alone which does not even consider the amount of additional damages Franklin incurred that have been valued at over $400,000. Therefore, the Arkansas Supreme Court found that Franklin could not have enjoyed a double recovery.

¶25. Here both parties cannot be "made whole." Hare endured pain and suffering in nasal surgery and now has a permanent facial scar. The State, through CENTRA, only paid $6,056.50 in medical expenses out of a total $8,667.50. Hare's expert witnesses by affidavit stated a potential recovery of between $50,000.00 and $175,000.00. Thus, the $10,000.00 recovered by Hare cannot possibly be said to have "made him whole" or to have been a double recovery. Finally, the State Health plan itself states that the subrogation clause's intent is to prevent a double recovery.

¶26. Additionally, in *Nationwide Mutual Ins. Co. v. Garriga*, 636 So.2d 658 (Miss. 1994), this Court answered the question of whether an insurer can contractually limit, credit or offset the amount of worker's compensation benefits received by its insured to the extent the insured's uninsured motorist coverage exceeds the statutory minimum required. There, we held that insurers are mandated by statute to provide uninsured motorist coverage up to the amount of liability insurance purchased when the insured so desires. In other words, insurers cannot reduce the value of uninsured motorist benefits by offsetting worker's compensation benefits. *Id.* at 663. Persuaded by the reasoning in *Garriga*, we hold that the State is not entitled to recover a portion of Hare's uninsured motorist benefits to offset payments to Hare under the State Health Plan.

¶27. For the reasons explained above, this Court adopts the "made whole" rule and holds that it is not to be overridden by contract language, because the intent of subrogation is to prevent a double recovery by the insured, especially here as expressly stated in the State Health Plan. Until the insured has been fully compensated, there cannot be a double recovery. Otherwise, to allow the literal language of an insurance contract to destroy an insured's equitable right to subrogation ignores the fact that this type of contract is realistically a unilateral contract of insurance and overlooks the insured's total lack of bargaining power in negotiating the terms of these types of agreements. *See generally*, Warren Freedman, FREEDMAN'S RICHARDS ON THE LAW OF INSURANCE, v. 2 § 12.6 (6th ed. 1990) *citing* Patterson, ESSENTIALS OF INS. LAW (1935), p. 122 (Subrogation is a windfall to the insurer [which] plays no part in rate schedules (or only a minor one).).

¶28. Alternatively, the State argues that Hare has failed to establish his damages. Specifically, the State objects to Hare's use of affidavits by two trial lawyers to establish his damages. The State objected to the use of these affidavits at the hearing before County Court Judge Henley, as follows:

"... I would object to the exhibits, a number of the exhibits that were attached to Mr. Stevens' motion for summary judgment, because I believe them to be irrelevant to the real issue and to be self-serving, and he has opinions from various trial lawyers as to how much this claim is worth."

¶29. The State argues that on summary judgment a party must support his claim with admissible evidence on each essential element of his claim on which he bears the burden of proof. *Wilbourn v. Stennett, Wilkinson & Ward*, 687 So.2d 1205, 1214 (Miss. 1996). Miss. R. Civ. P. 56 requires that the evidence relied upon be admissible under the rules of evidence generally and that the affiant be competent to testify on the matter offered. Miss. R. Civ. P. 56(e); *Magee v. Transcontinental Gas Pipe Line Corp.*, 551

So.2d 182, 186 (Miss. 1989).

¶30. Hare claims the State has waived any such objection, because "[w]here the party against whom a motion for summary judgment is made wishes to attack one or more of the affidavits upon which the motion is based, he must file in the trial court a motion to strike an affidavit." *Brown v. Credit Center, Inc.*, 444 So.2d 358, 365 (Miss. 1983). Failure to file the motion to strike constitutes waiver of any objection to the affidavit. *Travis v. Stewart*, 680 So.2d 214, 217-18 (Miss. 1996). This Court has held that a party opposing summary judgment must be diligent. *Grisham v. John Q. Long V.F.W. Post*, 519 So.2d 413, 415 (Miss. 1988). The State made no other objection than the one at the hearing until its argument in its brief before this Court. Therefore, we hold that since the State failed to file a Motion to Strike the Affidavits, it has thus waived any objection now.

## CONCLUSION

¶31. For these reasons, this Court adopts the "made whole" rule of subrogation, because the general intent of subrogation (and the stated intent of the State Health Plan) is to prevent a double recovery by the insured. Until the insured has been fully compensated, there cannot be a double recovery. Therefore, we reverse the judgment of the Hinds County Circuit Court, and we render judgment here in favor of Hare.

¶32. **REVERSED AND RENDERED.**

**PRATHER, C.J., PITTMAN, P.J., BANKS, McRAE, MILLS AND WALLER, JJ., CONCUR**. **SULLIVAN, P.J., NOT PARTICIPATING.**

1. In *Fields*, the federal court was sitting in diversity applying Oklahoma law. Later, the Oklahoma Supreme Court specifically held that it would not have allowed enforcement of the subrogation provisions in *Fields*. *Equity Fire & Cas. Co. v. Youngblood*, 927 P.2d 572, 575 n.3 (Okla. 1996).

2. Expert testimony estimated the potential value of Franklin's claims as in excess of $400,000. *Franklin*, 942 S.W.2d at 838.