Unsatisfactory results can occur no matter how we deal with an insurer's right to contract out from under the general rule that prevents subrogation to the rights of the insured against a third party until the insured has been made whole.[5] On the *Page 547 
one hand, enforcing an insurer's contractual right to intercept funds recovered by the insured from the tortfeasor, regardless of whether the insured has been made whole, allows an insurer to reimburse itself for sums previously paid to the insured under the terms of its obligation to the insured, at the expense of the insured's right to full compensation for a loss or injury. Yet, on the other hand, insisting upon an insured's being made whole as a prerequisite to the insurer's right to subrogation permits a tortfeasor to escape accountability where an insurance policy compensates the victim for only a part of his loss.
My awareness of a problem does not overcome my concern for the proper source for the solution. This Court generally has three options for dealing with an offensive contractual provision:
 1. To nullify or reform the contract on the basis of fraud. No evidence of fraud is suggested in this case.
 2. To nullify or reform the contract so as to eliminate any unconscionable provisions. I am unable to invoke in this setting the rule allowing a court to decline to enforce an unconscionable bargain, especially given the fact that the insured has been compensated for all but a few dollars of his loss.[6]
 3. To nullify any portion of the contract that violates public policy. I find nothing in the contract that conflicts with any provision of the Alabama Constitution of 1901 or any statute.
Another option available in this particular case would be to determine which version of the subrogation rule is the lesser of evils, to define the doctrine of equitable subrogation in accordance with that version, and then to announce that any contractual deviation therefrom is void, on grounds of public policy. Powell v. Blue Cross Blue Shield of Alabama,581 So.2d 772 (Ala. 1990), reaches such a result. See, also, Franklin v.Healthsource of Arkansas, 328 Ark. 163, 166, 942 S.W.2d 837,838-39 (1997) (overruling an earlier decision wherein a three-judge plurality had concluded that "conventional subrogation rights of an insurer created by contract prevail over an insured's equitable right of subrogation arising as an operation of law"). However, Powell arrogates to the judiciary, contrary to § 43 of the Constitution of Alabama of 1901, the authority to declare public policy.[7] That function is reserved to the Legislature, subject to limits imposed by the Constitution.Rogers v. City of Mobile, 277 Ala. 261, 281, 169 So.2d 282, 302
(1964). Accord, Franklin, 328 Ark. at 174, 942 S.W.2d at 843
(Imber, J., dissenting).
Until the Legislature should require otherwise, I therefore concur in overruling the across-the-board rule, as first expressed in Powell, requiring that a court disregard a contract provision conferring subrogation rights regardless of whether the insured has been made whole.[8]
Today's ruling leaves us with a predicament that existed before Powell. Rule *Page 548 
17(a), Ala.R.Civ.P., requires joinder of the insurer (the subrogee) as a coplaintiff even when the insured has a substantial interest in the claim apart from the insurer's subrogated interest. Forcing the joinder of the insurer as a coplaintiff then becomes a ploy for the purpose of weakening the insured's claim.
The rule was written so as to prevent the masquerade by which a subrogation claim is made solely in the name of the insured, when the insurer is the sole party with a pecuniary interest. However, as written, it requires joinder of the insurer in every instance when the insurer has a pecuniary interest in the claim. The result is that not only is the insurer required to be joined to prevent the masquerade that might occur when the insured's interest is limited to a claim for a small deductible, but the insurer also must be joined even when the insured has substantial claims not covered by insurance.
The use of Rule 17(a) in this fashion was not anticipated by the Advisory Committee on Rules of Civil Procedure in 1971-72 when it drafted our Rules.[9] The current advisory committee should consider an amendment to Rule 17(a) that would allow the trial court, when justice requires, to prevent a party from disclosing to the jury the insurer's interest. Such an approach would be a reasonable counterpart to the protection we now afford an insurer when we prevent a party from disclosing to the jury the insurer's obligation to satisfy the judgment in an action against its insured.
[5] For a brief overview of the evolution of the rule prohibiting such contracts and references to the rule as it is applied in other jurisdictions, see Ex parte Brock,734 So.2d 998, 999-1000 (Ala. 1999).
[6] Compare Hare v. State, 733 So.2d 277, 283-84 (Miss. 1999), where the Mississippi Supreme Court, using language suggesting a finding of unconscionability, refused to enforce a contractual provision sparing the insurer from the consequences of the made-whole rule in a setting where the insurer was trying to intercept funds paid to the insured under uninsured-motorist coverage provided by another insurer and the insured was nowhere near being made whole for injuries suffered in an automobile accident. Whether such circumstances would meet this Court's standards of unconscionability is not before us.
[7] Section 43 mandates the separation of the judicial power from the legislative power and condemns usurpation of the one by the department of government that is authorized to exercise the other.
[8] The doctrine of stare decisis has a diminished efficacy in instances where the former decision is grounded in an erroneous application of the Constitution and corrective action is limited to constitutional amendment or overruling the earlier decision.Agostini v. Felton, 521 U.S. 203, 235 (1997). See, also, Exparte Dan Tucker Auto Sales, Inc., 718 So.2d 33, 42, n. 10 (Ala. 1998) (Lyons, J., concurring specially and quoting from Justice Black's dissenting opinion in Gwin, White Prince, Inc. v.Henneford, 305 U.S. 434, 454-55 (1939) (Black, J., dissenting), in which he stated: "[T]he rule of stare decisis cannot confer powers upon the courts which the inexorable command of the Constitution says they shall not have.").
[9] My recollections in this area were first expressed many years ago in Champ Lyons, Jr., Alabama Practice, 17.2, pp. 295-96 (2d ed. 1986), and they were repeated in Champ Lyons, Jr., AlabamaPractice, 17.2, pp. 408-09 (3d ed. 1996).